UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JERALD THOMAS,

    Plaintiff,

v.                                             Case No. 2:07-cv-13
                                                   HON. ROBERT HOLMES BELL

FERNANDO FRONTERA,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff Jerald Thomas, an inmate at the Standish Maximum Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against defendant Fernando E. Frontera, who was employed as a physician at the Alger Maximum Correctional Facility during the pertinent time period. Plaintiff alleges in his complaint that he began suffering from chest and stomach pains in December of 2005. Plaintiff had a liver biopsy in February of 2006 and was found to have Auto-Immune Deficiency Syndrome, which caused damage to his liver. Plaintiff asserts that defendant has been deliberately indifferent in his treatment of plaintiff's medical condition. Defendant moves for summary judgment.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and

admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the

inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. Apr. 27, 2001); *Jones v. Martin*, No. 00-1522, 2001 WL 223859, at *1 (6th Cir. Feb. 28, 2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at * 4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at * 2 (6th Cir. Apr. 4, 1997).

Plaintiff alleges that he received improper medical care and that Dr. Frontera should have discovered that he had high liver enzymes much sooner and treated him appropriately. Plaintiff alleges that he became seriously ill and had to be taken to the emergency room. Plaintiff believes that his condition should have been diagnosed earlier. In the opinion of the undersigned, plaintiff has not established that Dr. Frontera acted with deliberate indifference. In fact, the medical records

show that Dr. Frontera responded to plaintiff's complaint and undertook extensive medical care and testing of plaintiff in response to plaintiff's claim.  Initially, plaintiff was treated for indigestion and acid reflux.  Blood work, an abdomen x-ray and other tests were ordered.  The x-ray showed a collection of gas overlying the upper medial compartment, but otherwise it was unremarkable.  Dr. Frontera ordered a CT scan of the abdomen.  The CT scan was negative.  An H. Pylori lab test returned negative results.  On August 3, 2005, a hepatitis panel was ordered.  After the results were received, Dr. Frontera ordered an appointment and more lab work.  More hepatitis testing was done on September 13, 2005.

Plaintiff was sent to the emergency room for stomach pains.  He was referred back to the prison for an upper and lower endoscopy.  Dr. Frontera requested a referral for gastroduodenoscopy.  Based upon Dr. Frontera's request, a consult with Dr. Sotirious Vasilopoulos was authorized.  Dr. Vasilopoulos conducted an endoscopy which revealed a small hiatal hernia and he recommended a colonoscopy. Dr. Frontera noted that Dr. Vasilopoulos recommended a lab test for protein electro-serum hepatitis.  Dr. Frontera noted that hepatitis lab tests from September 14, 2005, came back negative.  Dr. Frontera ordered the additional recommended testing.  Lab results showed that plaintiff had a reduced red and white blood count and high liver enzymes.  Dr. Vasilopoulos recommended that Dr. Frontera conduct lab work for a diagnosis of autoimmune hepatitis with a trial of prednisone and ezitropine.  Plaintiff was negative for hepatitis A, B, and C.  By February 8, 2006, plaintiff was confirmed to have autoimmune hepatitis.  Dr. Vasilopoulos recommended a liver biopsy which was approved by CMS.  The liver biopsy was conducted on March 27, 2006, at Marquette General Hospital.  The pathology report showed severe interface hepatitis with plasma cell infiltrate consistent with autoimmune hepatitis and severe portal-portal fibrous bridging.  Plaintiff received follow-up care and treatment from both Dr. Frontera and Dr.

Vasilopoulos.  Plaintiff may not have been happy with the timing of his diagnosis, but plaintiff cannot establish that Dr. Frontera acted with deliberate indifference.  In fact, the medical records show that Dr. Frontera was involved in plaintiff's health care extensively.  Furthermore, plaintiff has not shown that he suffered any detriment as a result of the alleged delay in his diagnosis.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant's Motion for Summary Judgment.  Accordingly, it is recommended that Defendant's Motion for Summary Judgment (Docket #54) be granted and this case be dismissed in its entirety.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal.  It is recommended that should the plaintiff appeal this decision, the court assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he should be required to pay the $455 appellate filing fee in one lump sum.

Dated:  September 23, 2008           /s/ Timothy P. Greeley
                                                                        TIMOTHY P. GREELEY
                                                                        UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).